Based on the docket, it's People v. Abel, and it's 5-13-318. Good morning. May I please the court? Counsel? I'm Scott Quinn. I am the court-appointed attorney to represent Edward Abel on this appeal. I was not his trial counsel on this case, as I believe my briefs probably make clear. Specifically, I say that because I raised two points that I felt that the trial counsel, my friend Matt Vaughn, made that were a sign of such ineffectiveness that it deprived my client, Mr. Abel, of a fair trial. The first of which that I'll outline is the fact that I think that's the one I was second in my brief, but I think it's the one that I'll raise first here today, is the fact that there was a prior, a recent sexually violent person evaluation done. I believe my briefs may have attributed to Dr. Phil Ryda. I think in actuality he was the superior who signed off on it, but it was actually Barry Leavitt who conducted that evaluation. But in any event, any time somebody is convicted in Illinois of a sexually violent offense and goes to the Department of Corrections, they receive a sexually violent person evaluation to see if it's appropriate for them to be placed in the sexually violent persons program, which is housed at Rushville here in Illinois. And because he had a qualified offense, they did one of those evaluations in late 2008 or early 2009 on Mr. Abel. The conclusion of that evaluation was that he did not meet the requirements to be considered a sexually violent person under the Sexually Violent Persons Act. The Sexually Dangerous Persons Act, which predates the Sexually Violent Persons Act, is very similar. And so whenever there was a sexually dangerous person's petition filed against Mr. Abel just a few months later in Wayne County, Illinois here, I feel that there is no reasonable strategy in failing to call, whether it be Dr. Ryda or Dr. Leavitt or Bellows-Smith. All their names appear on that one-page report. And I can't really tell who the one that prepared that report is, but his trial counsel should have determined that and had that person or persons subpoenaed to testify at trial. I have that two-page report listed in the appendix of my original brief. And in any event, regardless of who it was, there was discussion about that report by the doctor with the very long name, tie name that they just referred to him as Dr. Nathan throughout the trial. He referred to having referenced that report or that letter in the preparation of his evaluation. But there was not even any cross-examination about, well, what was contained in that report since you used that as a reference point? It was just completely glossed over or completely ignored by trial counsel. And there's no reasonable strategy for why one would have done that, why an attorney would have done that. And as I stated earlier, Mr. Vaughn, he's a good attorney. He's a friend of mine. But I also think that he, like I was a public defender for three years, and I think sometimes we public defenders kind of rely on our ability to pick up a file and try a case without much preparation. And I think he relied on his wits a little bit too much because the first issue I raise is his objection that he made about Dr. Angeline Stanislaus was an excellent objection. At the time she prepared the report, her evaluation in which she suggested to the court that Mr. Abel didn't meet the definition of a sexually dangerous person. She was employed. One of her primary sources of income was her employment on the sexually dangerous person's wing here at Big Meadow River Correctional Center in Jefferson County. And so she was the psychiatrist assigned to that wing of the prison. So Mr. Vaughn suggested in the objection he made just orally that she might be biased and maybe not appropriate to be an evaluator in this case. Well, unfortunately, it's my position, unfortunately, he did this just kind of as an, oh, yeah, by the way, threw it in there kind of as an, almost as an afterthought. And I cited a case on page 14 of my brief called McVeigh. And they outlined when it's appropriate or in a situation in which if your detective might be some sort of bias in the evaluators, then it's not inappropriate for the defense counsel to file an objection or asking that a different evaluator be appointed. And that's in this particular realm when it's the initial proceeding. Because the Sexually Dangerous Persons Act sets out that when there's an initial proceeding, it's two psychiatrists do this evaluation. It's not the state chooses one and the defense chooses one. The judge selects, the presiding judge selects who's going to conduct these. And perhaps the judge may have been unaware of the potential biases that Dr. Stanislaus may have had. Had Mr. Vaughn, the trial counsel, raised this objection prior to the day that we set for the bench trial, the day that we cleared our dockets. So we've got this case and we've got witnesses subpoenaed here and everything. If he'd have brought that in motion in advance of her preparing her award even, which he could have done, perhaps it would have been, I submit, it's likely it would have been considered much more favorably than just as an objection during the part of the trial where we're deciding if she qualifies as an expert witness. That's way too late in the game. Common sense just tells you that it would have been much more successful if it had been launched at a time much earlier in the proceeding like it's described in the McVeigh case. And I know that I've appeared before both Justices Goldenhurst and Welch on sexually dangerous or sexually violent persons' cases. I do a lot of these. And I know that the clients, they oftentimes think that they just get to handpick an expert regardless of what stage they're in. And I've had to tell them many a time, that's not the law. The judge picks in the initial proceeding. And then once they're found to be sexually dangerous persons and they're filing an application showing recovery, they don't have a right to one unless there's some sort of bias that is able to be shown in the report. And that's what the Burns case is about. But that Burns case is about the recovery petitions, which is not what we're talking about here. So Mr. Vaughn didn't have to show any bias actually within the pages of Dr. Stanislaus's report. He would have just had to show them that, you know, he would have been able to rely strictly on information that can be found off of her curriculum V-take that there's bias there. It's based on, you know, her appointment at the time that she conducted this evaluation was she was recommending that he be found adjudicated in a manner that would have put him into the program that paid her paycheck. And so he didn't need to look within the pages of her report or hear her testimony to determine that bias might exist. He could have done that strictly from knowing where she works, which I'm confident Mr. Vaughn did know where she works. And so that's kind of what I'm getting at in my brief when I'm talking about he should have filed this much, much earlier because he didn't have to wait and see her report and then decide, oh, yeah, now I think she's biased. He could have determined that the likelihood for bias exists upon hearing that she was one of the two evaluators appointed to represent or to evaluate the court. And once he had been appointed to represent Mr. Abel, he could have launched with that motion, striking her and appointing a more appropriate evaluator then instead of waiting to the date of the trial. And so I lay out in my brief my Strickland analysis, and I believe that both on the issue of not objecting to Dr. Stanislaus' participation in a timely manner, I believe that the necessary problems of Strickland are met there because there's quite a likelihood that a new evaluator might have come up with a different opinion. And why do I think that? Because, one, just a couple years earlier, a few months earlier, whether it's Rida, Levitt, or whoever did the sexually violent person evaluation, they said it wasn't a sexually violent person, and those acts are very close as far as what they've got to find. They've got to find a requisite offense, an existing mental disorder, and the fact that the mental disorder gives them a predisposition to and a likelihood to commit these crimes in the future. And so since we've got somebody who had done – had virtually the same fact pattern in the same – in dealing with the same canvas, so to speak, they came to a completely different conclusion than Dr. Nathan and Dr. Angela Stanislaus. There's a reasonable suspicion on my part that a new evaluator, one appointed instead of Dr. Stanislaus, would have come to that same conclusion that he was not sexually dangerous. And then if we've got one evaluator saying this and one evaluator saying the other, both being independent evaluators, not one hired gun for the state and one hired gun for the defense, it's quite likely that the judge would find the reasonable doubt necessary to find – or to not find Mr. Abel to be a sexually dangerous person. And then on the issue of failing to call Dr. Levin or Ryder or Mellie Smith, whichever one it was, as a witness at the trial, I just can't think of any reason why we wouldn't want to submit favorable evidence on our client's behalf. Because whenever I have these – I'm taking these – you know, it's a closing argument. I sure would rather have two against one versus two against none. It makes it a lot harder to make the argument – it's like a toothpaste commercial. So two out of two doctors say – and when it's one out of three doctors say he's not a sexually dangerous person, well, then that turns into a reasonable doubt situation in a hurry. And so I just can't fathom an instance in which it's not – it's good strategy not to bring that favorable evidence. And so for that reason, I think it's – any suggestion that trial strategy is the reason why – or the reason why the Court won't really consider that as a denial of my client's constitutional rights. I just don't think that the trial strategy argument applies here. Thank you, counsel. Thank you. Good morning. May it please the Court? Speak loud so it gets recorded. Assistant Attorney General Samina Mohammed, on behalf of the people. Your Honors, this Court should affirm the trial court's judgment finding Respondent to be an SDP and committing him to the custody of the Director of the Department of Corrections. I'll turn first, as Respondent did, to his second argument in his brief regarding the ineffective assistance claim premised on trial counsel's decision not to introduce the 2008 sexually violent person evaluation checklist. Now, counsel suggests that this evaluation was recent, but in fact it was completed by Dr. Levitt in February of 2008. For some reason, the letter that Dr. Ryda sent the State's attorney didn't get sent out until January 2009. It's unclear why that delay was there, but the evaluation itself was completed in February 2008. And that is almost five years prior to trial in December 2012. So for that reason, because the evaluation was outdated, that's one of the reasons why trial counsel was not ineffective for deciding not to introduce it. After the evaluation was completed, Respondent went on to commit additional sex offenses. Specifically, he was convicted of one count of aggravated criminal sexual assault, and he was indicted on a separate count, again, of aggravated criminal sexual assault. Both of those offenses occurred after Dr. Levitt made his recommendation not to recommend Respondent for civil commitment in February of 2008. And Dr. Srinivasa Raghavan and Dr. Stanislav, both, when they were conducting their evaluations, both of which occurred about a year prior to trial, they had the knowledge of that more recent conviction and the indictment in reaching their conclusions that Respondent was an SDP. In fact, Dr. Srinivasa Raghavan, as Respondent pointed out, did specifically state that he reviewed Dr. Levitt's checklist in reaching his conclusion, but that did not preclude him from finding that Respondent was an SDP. So under these circumstances, it was not reasonably probable that had the evaluation or had the checklist been introduced, trial counsel would have privileged that outdated evaluation over the much more recent testimony of Dr. Srinivasa Raghavan, again, who considered the evaluation, and Dr. Stanislav. And briefly, before I turn to Respondent's other argument regarding ineffective assistance on trial counsel's decision not to object to Dr. Stanislav's testimony, I wanted to also mention that the checklist itself is not properly before this Court, and it's more suited, and Respondent's ineffective assistance claim in this regard is better suited to collateral proceedings under Section 214.01. While Dr. Srinivasa Raghavan did testify that he considered the checklist, the trial court was not made aware of the conclusions in the checklist, or who completed it, or any information regarding what the checklist was about or how, or just any information about the checklist itself. And so for that reason, because it was not part of the record in the trial court, it was never introduced into evidence, this Court, as a court of review, should find that Respondent should bring his claim of ineffective assistance premised on the checklist in a Section 214.01 petition. And the Supreme Court in People v. Lawton explicitly approved Section 214.01 as a vehicle for SDP Respondents to bring ineffective assistance of counsel claims that they could not bring for whatever reason on direct appeal. And this claim is better suited for such a proceeding. So turning then to Respondent's argument regarding trial counsel's decision not to make a pretrial objection to Dr. Stanislaus' qualifications and move to appoint an independent expert. According to Respondent, this argument should have been premised on Dr. Stanislaus' tangential relationship with the Department of Corrections. But People v. Burns, I believe, is controlling authority here. And in Burns, the Supreme Court rejected a nearly identical argument. There, the Court held that a relationship with a governmental entity does not render a psychiatric expert biased in and of itself. And it's true, as Respondent said, that the question the Supreme Court was presented with in Burns is different than the question this Court is presented with today. In Burns, the issue was whether Respondents in recovery proceedings were entitled to the appointment of independent experts as a matter of law under the Due Process Clause. Here, Respondent is making a much narrower argument and arguing that he himself is entitled to the appointment of an independent expert because of Dr. Stanislaus' alleged bias. But the basis for the Respondent's objection in Burns is the same basis that Respondent asserts here, namely bias of state experts based solely on the fact that they are affiliated in some respect with the state. Isn't this a disqualification argument as opposed to an assertion that the party has the right to independently determine another expert? Isn't it pretty narrowly based on a disqualification argument? Yes, it is narrowly based on the disqualification argument. But again, the Respondents in Burns, while they were not making a disqualification argument, they were making a broader argument that they were entitled to independent experts. Right. But wouldn't that distinguish Burns? I don't believe so, Your Honor, because the basis for the Respondent's argument in Burns was that the experts that were court appointed or, I think, in recovery proceedings, statutorily appointed, were presumptively biased because of their relationship with the state. And that's the same basis that Respondent is making his disqualification argument here, that Dr. Stanislaus presumptively biased solely based on her affiliation with the state. And that's the argument that the Supreme Court rejected in Burns. And that's the same way that the trial court would have rejected this argument, regardless of when it was made, if it was made prior to trial, or as counsel did make the objection during one year on the day of trial. And the Supreme Court explained in Burns that Department of Corrections professionals, in general, are untainted by their employment with the department because of their overarching professional and fiduciary responsibilities to their patients. So if that was true as a general proposition in Burns, albeit with regard to a different question, it would remain true here, that objecting to an expert based solely on her affiliation, her tangential affiliation with the state, is not enough to show bias. And so it's your position that the broader request for relief, based on this alleged conflict of interest in Burns, would not have an effect on a more narrow request here for disqualification only? And you're saying that the fact that in Burns, counsel was asking for broader relief would have no effect? Burns, I believe, is sufficiently analogous to this case. But even if this court finds that Burns is not sufficiently analogous because they were requesting broader relief in Burns than here, Respondent's claim of ineffective assistance should still fail. And that's because there's no evidence that a different expert would have reached a conclusion other than the one that Dr. Srinivasa Raghavan reached, or Dr. Stanislav reached. Respondent was not objecting to Dr. Srinivasa Raghavan's expert opinion. The only basis that Respondent asserts, or the only example Respondent gives, that a different expert would have reached a different conclusion is, again, this 2008 evaluation by Dr. Levitt. And as I've explained, the 2008 evaluation was conducted well in advance of trial. And after that evaluation was conducted, Respondent went on to commit additional sex offenses. So it's quite likely that a more recent, that if even Dr. Levitt had been called, his opinion could very well have changed based on the fact that Respondent committed additional sex offenses. So the 2008 checklist is not probative evidence that another expert appointed in 2011 would find, or 2012, would find that Respondent was not an SDP. And the trial court would still be left with Dr. Srinivasa Raghavan's testimony that Respondent is an SDP. And merely two conflicting experts does not give rise to reasonable doubt. It's, the trial court could have found that an expert that found that Respondent was not an SDP could have found that such an expert wasn't credible and chosen to credit the testimony of Dr. Srinivasa Raghavan. And that would not have been in violation of, or that would not have been an error. So for these reasons, people would ask that this court affirm the trial court's judgment finding Respondent to be an SDP. Thank you, counsel. Reba? Thank you. Regarding this notion that the new offenses would have somehow changed Dr. Leavitt's report, I'll direct it at this point, Director Honors, to pages 8 and 9 of my brief, where I have my statement of facts that is a very warts and all statement of facts. I don't hide his record. But while you can see with what Mr. Abel has done, 2003, arrested in Olney for groping the buttocks of an adult woman in the Dollar General store. 2004, in Richland County, there was a complaint involving a 14-year-old who he groped her buttocks in Walmart. 2006, grabbing the buttocks of a 17-year-old named Kelly in Fairfield, Walmart. So there's something about discount prices and young women that caused him to offend. 2006, does the same thing in the Flora Walmart. And then the 2010 offense, grabs another buttocks in the Flora Walmart. So the crime that was committed, the post-2008 report sex offense that's referenced by counsel, is substantially similar to the four or five other offenses that Dr. Leavitt certainly was aware of. So I don't think that there really is, I think that's a red herring. I think that my conclusion that a different evaluator may have come to a different conclusion because we've gotten a different evaluator who made a different conclusion a few months, a few years earlier. It's a reasonable conclusion to make. And I believe Justice Goldenberg hit the nail on the head distinguishing McVeigh and Burns situations. Burns is for whenever they've already been adjudicated, a sexually dangerous person, and they're filing a recovery petition trying to say, okay, I'm better now. And they get a report that's filed, and then in the Burns situation, they have to show there's something about that report that indicates that there's a bias that exists. And so, you know, there's boilerplate that's used, or they've just cut and pasted from a prior report, or they've got things actually stated inaccurately. None of those things would Mr. Vaughn have had to show, in my opinion, to disqualify Dr. Stanislaus ahead of her in preparing a report if he would have made the McVeigh objection that I believe should have been made. And so that would be my rebuttal to that. And then regarding the fact that this would be my – the issues that I raised would have been better raised as a 1401 – a section 214.01 motion. I think that I have addressed that in my reply brief. And also just want to point out that in the transcript, Dr. Nathan is specifically asked about – or specifically mentions this document that I've included in my appendix. He talks about it, and so I think that it is sufficiently incorporated by reference within the record. They just didn't have the document itself as an exhibit that they talked about in the trial, even if it's ever so briefly. It is discussed, and so I think it's appropriate here. And also it would be a waste of judicial – it would be in violation of judicial economy to make its comeback on yet another appeal whenever it – that is the issue that clearly shows his trial counsel's ineffectiveness. And so I would urge the court to rule in a manner that remands us so my client gets a fair trial this time around. Thank you, counsel. In case you would have taken an advisement, you'll be excused. The court will take a short recess.